**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAVERNE ARMSTRONG, ROBBIN ARMSTRONG, and CORDERO ARMSTRONG, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 08 CV 04398 |
| v. | ) ) | Judge Edmond E. Chang |
| MICHAEL MALONEY, THIEN CHAIKET, BRIGID CARLQUIEST, PIOTR SZCZUROWSKI, ALAN LASCH, GEORGE NIEDZWIECKI, ELIZABETH ROSELIEB, DAVID MICHAELSEN, JOSEPHINE CHRISTOPHER, and CITY OF CHICAGO, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Laverne, Robbin, and Cordero Armstrong filed this lawsuit against a group of Chicago police officers (the Officers), along with the City of Chicago.[1] The Armstrongs seek to recover damages under 42 U.S.C. § 1983. Both sides have filed motions for summary judgment [R.113; 119]. For the reasons explained below, the Armstrongs' motion is denied and the Defendant Officers' motion is denied in part and granted in part.

**I.**

In deciding the parties' cross-motions for summary judgment, the Court views the evidence in the light most favorable to the respective non-moving party. On

---

[1]Citation to the record is "R." followed by the docket entry. The Court has federal question jurisdiction. *See* 28 U.S.C. § 1331.

January 12, 2007, at around 5 p.m., Officer George Niedzwiecki and his partner, Officer Piotr Szczurowski, were dispatched to the 400 block of North Hamlin. R.121 ¶ 28. There, they encountered Aimee Dunlap,[2] who told the two officers she had just found the car that she had earlier reported as stolen. R. 114 ¶ 9. According to the officers, she also said that Corvell Hodges, her ex-boyfriend, was the one who stole her car. R.121 ¶ 29. Dunlap asked the officers to arrest Hodges (who was not present at the time) but Officer Niedzwiecki explained that Dunlap would have to agree to swear out a warrant for his arrest first. R.121, Exh. D (Niedzwiecki Dep. at 26). The officers then left the scene. *Id*. at 30–31.

A few hours later, the two officers were again dispatched to the 400 block of North Hamlin because of a report of domestic battery. R. 121 ¶ 31. When they arrived, they saw both Dunlap and Hodges in the area. *Id.* ¶ 64. At this point, the parties disagree as to what Dunlap said. The officers maintain that Dunlap told them that Hodges hit her and that she wanted him arrested. R. 121 ¶ 32. In contrast, Dunlap denies that she ever told the officers that Hodges hit her. R. 114 ¶ 26.

The parties do agree, however, that at this point, Officer Szczurowski asked Hodges, "Come here. We want to talk to you." R. 114 ¶ 35; R. 121 ¶ 35. As the officer said that, Hodges began to run (according to Hodges and Dunlap, he walked, not ran) away from the scene. R. 121 ¶¶ 35-37. Officers Szczurowski and Niedzwiecki both

---

[2]By the time of Dunlap's deposition, she was married to Corvell Hodges and went by the name Aimee Hodges. R. 129 at 3 n.1. Because of the evidentiary references to Ms. Hodges as Aimee Dunlap, this opinion will refer to her by the latter name.

jumped out of the squad car, and gave chase. *Id.* ¶ 37. At this moment, according to the officers, Dunlap yelled out that Hodges had a gun. *Id.* ¶ 38. The officers also testified that Dunlap later said that Hodges was known to have a gun, but that she was not sure if he was carrying a gun with him at that time. R. 114 ¶ 42. Dunlap denies ever making these statements. *Id.* ¶ 41.

During Officer Niedzwiecki's chase of Hodges, Officer Niedzwiecki used his radio and stated, over the air, that he was chasing a domestic battery suspect who might have a gun. R. 121 ¶ 38. But the officers were unable to catch Hodges, and soon gave up chasing him. R. 114 ¶ 46. They decided to wait to see if he would come back. R. 121 ¶ 40. Hodges did indeed return, and when the officers saw him, they saw him climbing over the gate and jumping into the backyard of 425 North Hamlin. *Id.* ¶ 41.

The officers saw Hodges run up the stairs and pound on the door of the second floor apartment while yelling, "Let me in. Let me in." *Id.* ¶ 75. The door opened, and Hodges was let inside. *Id.* By this time, several officers had arrived at the scene, but the officers did not have a warrant to enter the second-floor apartment. Officer Szczurowski went over the air and let everyone know that Hodges had gone inside the second-floor rear door of the apartment and had closed the door behind him. *Id.* ¶ 78. Those living inside the apartment were Charles, Laverne, Cordero, and Robbin Armstrong, along with Robbin's infant daughter. R. 114 ¶ 55.

To continue the pursuit of Hodges into the apartment, Officer Szczurowski, along with four or five plainclothes officers, ran up the stairs, and began pounding on the door while yelling, "Police. Open up the door." *Id.* ¶ 79. According to Officer

Niedzwiecki, the woman behind the door asked if the officers had a warrant. R. 114 ¶ 58. The officers replied that they did not. *Id.* The woman refused to open the door; the officers broke down the door and entered the apartment. R. 121 ¶¶ 50, 80. In total, ten to twelve officers entered. *Id.* ¶¶ 85, 137. The officers ordered all the apartment's occupants to get on the ground, and all of the occupants complied. *Id.* ¶ 111. As the search for Hodges began, the parties dispute what happened next.

In the officers' version of events, Robbin Armstrong tried to mislead the officers into believing that Hodges had escaped the apartment. Officer Szczurowski recalled Robbin yelling, "There's nobody here. He ran out the front door." R. 121 ¶ 83. Officer Niedzwiecki also heard Robbin tell the officers that Hodges ran out the front door. *Id.* ¶ 57. Other officers confirm that Robbin made these statements. *Id.* ¶ 163. In contrast, Robbin denies making any of these statements. R. 155, Exh. I (Robbin Dep. at 140–141). According to her, she told the officers that there were only five people inside the apartment because she was unaware that Hodges had entered. R. 121 ¶ 124.

The parties do agree that the officers soon found Hodges and arrested him. R. 114 ¶ 63. After the arrest, the officers continued to search the apartment. R. 154 ¶ 18. Cordero Armstrong claims that the officers kicked and stepped on his face and back. *Id.* ¶ 11. The officers also arrested Robbin Armstrong because they believed she tried to mislead them into thinking that Hodges was not in the apartment. R. 121 ¶ 125; R. 114 ¶ 73.

Soon after, the police officers left the Armstrong apartment. After they left, the Armstrongs discovered that the back door was broken. R. 154 ¶ 21. They also

discovered that Robbin Armstrong's bed and the railings were broken, and $250 was missing from Robbin's bedroom. *Id.* ¶¶ 22–24.

Officer Maloney later prepared and signed a misdemeanor complaint that charged Robbin Armstrong with Obstructing a Police Officer. R. 114 ¶ 76. On February 26, 2007, the Circuit Court of Cook County struck the charge from the docket with leave to reinstate. *Id.* ¶ 78; R. 125 at 17. The charge was eventually dismissed. R. 129 at 7.

These events led to this lawsuit. In August 2008, Laverne, Robbin and Cordero Armstrong filed a five-count complaint under 42 U.S.C. § 1983. R. 1. The first three counts were false arrest, search and seizure, and failure-to-intervene claims by each of the Armstrongs against all of the defendants. *Id.* ¶¶ 19–29. The last two counts were claims (relating to her arrest and prosecution) by Robbin Armstrong against all of the defendants.[3] *Id.* ¶¶ 30–41. The Armstrongs filed a motion for partial summary judgment on Counts 1, 2, and 5. R. 113. The officers filed a motion for summary judgment on all claims. R. 125.

---

[3]The plaintiffs later voluntarily dismissed Count 4 (relating to due process violations). R. 153 at 10. Defendants seek to have the Court dismiss this claim with prejudice and grant costs. Under Federal Rule of Civil Procedure 41(a)(1)(A)(2), the dismissal is with prejudice because it comes so late in the litigation. No costs, however, will be awarded in light of the substantial overlap between the due process claim and the false arrest and malicious prosecution claims.

## II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The same standard applies to cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir.2008).

## III.

Before examining in detail each claim and the parties' dueling cross-motions for summary judgment, it might help to state the conclusions, just as it helps to glance at the destination on a map before tracing the road from start to end:

> ‣ *Warrantless entry*: neither side wins summary judgment on this claim. The officers offer evidence that Dunlap accused Hodges of hitting her and reported that Hodges had a gun, which are exigent circumstances for chasing Hodges into the apartment without a warrant. Dunlap denies saying those things, which would undermine probable cause and refute exigent circumstances. This claim must proceed to trial.

> ‣ *Damage to property and use of excessive force.* The Armstrongs allege that, after the officers entered the apartment, the officers damaged their property and used excessive force against Cordero Armstrong. But the Armstrongs cannot specifically identify who did what, or who might have been able to intervene.

6

Because the officers can be held liable only for their personal conduct, the officers are entitled to summary judgment on these claims.

‣ *Post-Hodges Arrest.* After Hodges was arrested, the exigency (if there was one) dissipated. Yet the undisputed fact is that the officers remained in the apartment, and continued to seize the Armstrongs (they could not leave), for some time after the arrest. Both the overstay and the seizure after the arrest of Hodges was unreasonable under the Fourth Amendment, and on those claims, it is the Armstrongs who are entitled to summary judgment on liability. The trial will address damages for these liabilities.

‣ *Arrest and Prosecution of Robbin for Obstruction.* The five officers who were not involved in Robbin's arrest win summary judgment on the arrest and malicious prosecution claims. But there is a genuine issue over whether the two officers who did make the arrest had probable cause to do so. As to those two officers, neither side gets summary judgment on the false arrest and malicious prosecution claims. (And contrary to the officers' argument, the malicious prosecution claim was timely filed.)

## A.     Warrantless Entry

The first claim advanced by the complaint is a Fourth Amendment violation based on the warrantless *entry* into the Armstrongs' apartment, a claim distinct from the claims premised on what the officers allegedly did *after* entering. To justify entering into the apartment without a warrant, the officers argue that they had probable cause to arrest Hodges for domestic battery and that there were exigent circumstances (Dunlap told them that Hodges had a gun) to chase Hodges into the apartment. The Armstrongs contend that the officers did not have probable cause to arrest Hodges at all, R.129 at 8–10, and that even if there was probable cause to arrest him for domestic battery, the crime was insufficiently serious to justify a warrantless entry. R. 129 at 7–8, 11–12; R. 153 at 5–7.

7

For the Armstrongs' summary judgment motion, the evidence must be viewed in the officers' favor, and in that light, the officers readily had probable cause to arrest Hodges and to chase him into the apartment. Probable cause is measured from the officers' perspective, and here they knew or believed enough (even when viewed in the light most favorable to Plaintiffs) to arrest Hodges for domestic battery and chase him into the apartment. It is undisputed that the officers had been dispatched to respond to a domestic disturbance. R. 121 ¶¶ 31, 62. Police department communications records show that the officers were responding to code "DD" at 8:23 p.m. R.167, Exh. E at 11. In the briefs, the Defendants have not clearly explained the "DD" code's meaning, but Officer Niedzwiecki did testify that the officers were responding to a report of domestic disturbance, specifically related to Aimee Dunlap. R.167, Exh. D (Niedzwiecki Dep. at 32). Moreover, the officers testified that they had responded to an earlier call in the day, where Dunlap was upset because she believed that Hodges had stolen her car. R.121, Exh.B (Dunlap Dep. at 16); Exh. D (Niedzwicki Dep. at 23). Most importantly, the officers maintain that Dunlap told them that Hodges hit her and that she wanted him arrested. R. 121 ¶ 32.

In addition to the dispatch and Dunlap's accusation, the officers also could add into the probable-cause mix Hodges's reaction when they approached him. The moment the officers tried to ask Hodges a few questions, Hodges began to run away. R. 121 ¶¶ 35-37. Officers Szczurowski and Niedzwiecki gave chase, and Dunlap yelled out that Hodges had a gun. *Id.* ¶¶ 37-38.

These were more than enough facts to justify the warrantless entry. One of the exceptions to the warrant requirement is exigent circumstances. Exigent circumstances include situations where officers are in hot pursuit of a fleeing felon. *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003). Hot pursuit means some sort of chase but need not extend to "an extended hue and cry in and about the public streets." *United States v. Santana*, 427 U.S. 38, 42 (1976). The amount of information the police are required to gather before establishing probable cause for a warrantless entry is a function of the gravity of the crime and the threat of its imminent repetition. *Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir. 1995). Courts also weigh factors such as whether there was a clear showing of probable cause and whether the arresting officer reasonably believed that the suspect was armed. *United States v. Acevedo*, 627 F.2d 68, 70 (7th Cir. 1980).

Here, the officers were in hot pursuit of someone accused of hitting a victim, running away from officers, and having a gun. Those facts readily support exigent circumstances to chase Hodges into, from what the officers could observe, an apartment that could have occupants vulnerable to an armed suspect.

Notwithstanding the danger, the Armstrongs argue that even if Dunlap did accuse Hodges of hitting her, the officers could not take her accusation at face value. R.129 at 8–10. Instead, Plaintiffs contend, the officers had the duty to conduct follow up investigations before making an arrest. *Id.* at 9. To be sure, a "police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when . . . it is unclear

9

whether a crime had even taken place." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). In *BeVier*, two police officers saw two young children sitting in a ravine in direct sunlight while the temperature was over 100 degrees. The officers also saw a teenage girl sitting in the shade, who said she was watching the children as a babysitter. *Id.* at 125. The officers accompanied the children to the hospital, and when the parents arrived, the officers arrested them immediately. *Id.* No charges were filed against the parents, however, and the two were released soon after. The parents filed a § 1983 suit against the two officers. The Seventh Circuit noted that the officers failed to gather information before the arrest: they did not speak to the babysitter nor did they interview the parents. *Id.* at 127. Moreover, there were no exigent circumstances that justified an immediate arrest. *BeVier* explained that "[t]here was no fear that [the plaintiffs] were about to flee, and the investigation would not have significantly interfered with [the arresting officer's] police duties." *Id.* But as flagged by that last quoted sentence, *BeVier* is easily distinguished from this case, where (a) there was a direct accusation from the victim and (b) Hodges fled from the officers.

For the officers' summary judgment motion, the evidence is viewed in the Armstrongs' favor, and in that light, there is a jury question over whether there was probable cause to arrest Hodges and to chase him into the apartment. Dunlap denies ever telling the police that Hodges hit her. R.121, Exh. B (Hodges Dep. at 89). Although it is unfortunately true that victims of domestic violence commonly recant truthful accusations, *see United States v. Young*, 316 F.3d 649, 655 (7th Cir. 2002), when viewed

in Plaintiffs' favor, the Court must evaluate the officers' motion by crediting Dunlap's denial that she accused Hodges and her denial that she said Hodges had a gun.

Without Dunlap's accusations, the officers did not have much to justify an arrest, let alone to justify their belief that Hodges was carrying a gun. To be sure, the officers present compelling evidence that they at least *subjectively* believed that Hodges had a gun. Specifically, Officer Szczurowkski testified that he reported over the radio that Hodges might have a gun. R. 121 ¶ 72. While this was happening, Officer Niedzwiecki began to chase Hodges and he too radioed over the air that Hodges might have a gun. *Id.* ¶ 54. Strong evidence supports the testimony, namely, records from the police department's Office of Emergency and Communications, which houses a computer database of law-enforcement event descriptions. R.167, Exh. E. For the entry of January 12, 2007, at 8:31 p.m., the event transcriber wrote, "officers chasing male offender c/s there's a great poss he has a gun." *Id.* at 16. The event records show that the officers, at the least, subjectively believed that Hodges possibly had a gun, and the time-stamped record was made 20 minutes before the officers set foot in the Armstrongs' home. *See id.* at 12. But the evidence must be viewed in the Armstrongs' favor, which means accepting as true Dunlap's denial that she told the officers that Hodges had a gun. If the jury were to credit that denial, then the officers had no basis for the subjective belief; perhaps it was just baseless speculation. Thus, the officers are not entitled to summary judgment on this claim.[4] Neither side is.

_____

[4]Qualified immunity does not apply to bar the claim because if the belief that Hodges was carrying a gun was baseless (which a reasonable jury could conclude), then a reasonable

### B.     The Damage to Property & Excessive Force

After entering the Armstrong residence, the officers searched through the entire apartment. R. 154 ¶ 15. The parties agree that the officers eventually apprehended and arrested Hodges. R. 114 ¶ 63. According to the Armstrongs, at some point during this lengthy search, the officers broke Robbin Armstrong's bed, damaged the railings in the hallway, and stole $250 from Robbin Armstrong's bedroom. R. 154 ¶¶ 22, 24. Even worse, the officers supposedly kicked and stepped on Cordero Armstrong's face and back. *Id.* ¶ 11. The Armstrongs contend that not only did the officers violate their rights with these actions, the officers who stood by idly and watched everything happen are also liable for failing to intervene. R. 153 at 4–5.

Although there are circumstances where an officer may be held liable for the misconduct of others, the general rule is that "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish defendants' personal responsibility for the claimed deprivation of a constitutional right." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). "Liability under § 1983 must be predicated upon personal responsibility." *Starenski v. City of Elkhar*, 87 F.3d 872, 880 (7th Cir. 1996) (citing *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984)). Throughout the entire time the officers were in their apartment, the Armstrongs were face-down on the ground. R. 154 ¶¶ 8–9. Although they claim to have heard the officers rummaging through their drawers, none of the plaintiffs actually saw any of the officers. R. 154 ¶ 15. The Armstrongs argue

---

officer would know that there were no exigent circumstances.

that direct identification is unnecessary under *Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000).

In *Miller*, three police officers mistakenly arrested the plaintiff at a gas station. *Id.* at 492–93. While the plaintiff was face-down on the ground, one of the three arresting officers beat him and stole money from his wallet. *Id.* at 493. The district court granted summary judgment for the officers because the plaintiff was unable to identify the specific offending officer. *Id.* The Seventh Circuit reversed, explaining that all three officers may be liable because whoever did not assault the plaintiff would be liable for failing to intervene. *Id.* at 495. But the arrest in *Miller* involved all three of the police officers in the physical take-down of the plaintiff. *Id.* at 492–93. At the time of the alleged misconduct, all three officers were either standing nearby or standing over him. *Id.* In contrast, here, it is not possible to infer that *all* of the officers were involved in, directed, or observed (such that they could intervene against) the rough treatment of Cordero Armstrong, the damage to personal property, or the theft of the $250. The events occurred in an apartment with at least 5 different rooms. *See* R.121, Exh. I (Charles Armstrong Dep. at 63). The officers were moving in and out of these 5 different rooms the entire time. Laverne Armstrong Dep. at 165. As stated earlier, the Armstrongs were all face-down on the ground the entire time the officers were in the apartment. Even in the light most favorable to them, the Armstrongs cannot establish which officers were either personally responsible or were in a position to intervene in

13

the specified misconduct.[5] Therefore, their claims regarding these specific acts cannot

survive defendants' summary judgment motion.[6]

### C.    Post-Arrest Seizure and Continued Occupation of Apartment

The Armstrongs accuse the officers of exceeding the scope of their authority

when they continued to detain the Armstrongs after Hodges's arrest. R. 153 at 8–9; R.

154 ¶ 18. The officers do not dispute this testimony and make no arguments that they

left immediately (or at least reasonably soon) following Hodge's arrest.[7] According to

the Armstrongs, the officers continued to search the entire apartment even after

Hodges was arrested. R. 153 at 8; Laverne Armstrong Dep. at 165–166. The officers

failed to adequately dispute this fact.[8] R. 175 at 6. According to Plaintiffs, the officers

were in the Armstrong apartment for 30 minutes to 1 hour. R. 154 ¶¶ 19, 20. The

officers have presented no arguments as to why, after finding and arresting the fleeing

---

[5]The officers cite *Tomasso v. City of Chicago*, 782 F.Supp. 1231, 1235 (N.D.Ill. 1991), *rev'd on other grounds, Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981), for the principle that an officer who is not explicitly identified by the plaintiff cannot be held liable. R. 125 at 4. But that case was decided before *Miller*, where the Seventh Circuit approved the use of failure-to-intervene liability to cover the officers, all of whom could have at least intervened. 220 F.3d 491.

[6]Because the Armstrongs' claim cannot survive summary judgment even when facts are viewed in light most favorable to them, of course their cross-motion for summary judgment is denied.

[7]The Court notes that, in his deposition, Officer Niedzwiecki was asked what happened after Hodges was arrested. Niedzwiecki Dep. at 85. But after page 85 of the deposition, the page number jumps to 90. *Id.* The Armstrongs have also failed to include pages 85 to 90 of Niedzwiecki's deposition.

[8]The officers respond to ¶ 18 by denying that the "entire apartment" was searched. The denial parses words: the officers argue that Laverne Armstrong said the search continued through the "house" – as opposed to the "entire apartment." R. 175 at 6.

suspect, the continued occupation of the apartment and the continued seizure of the Armstrongs was reasonably necessary. It is the Armstrongs who are entitled to summary judgment on this claim, and trial on this issue will pertain only to damages.[9]

### D. Robbin Armstrong's Arrest

#### 1. False Arrest

Robbin Armstrong also claims that the officers arrested her without probable cause. Probable cause requires officers to have a "reasonable ground for belief of guilt," and the belief must be "particularized" to the person. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). The standard is one that is applied with due regard to "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* at 370 (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Robbin contends that the officers did not have probable cause to arrest her, and she presents two arguments – one factual and one legal.

Robbin's legal argument is that even if the officers' testimony is believed, they did not have probable cause to arrest her for "Obstruction of a Peace Officer." R. 129 at 13. Under Illinois law, a "person who knowingly . . . obstructs the performance by one known to the person to be a peace officer . . . commits a Class A misdemeanor." 720 ILCS 5/31-1(a). Robbin argues that obstruction under this statute is defined as a *physical* act; mere words or false information is not enough. R. 129 at 13 (citing

---

[9]For this claim, there is no specific wrongdoer that must be identified because all of the officers continued the search and all of the officers are responsible for the continued detention of Plaintiffs.

*Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001)). Indeed, Illinois courts have explained that the statute "proscribe[s] only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent, or delay the performance of the officer's duties . . . ." *People v. Raby*, 240 N.E. 2d 595, 599 (Ill. 1968). So even under the officers' version of events, Robbin argues, she never physically obstructed their movement, and thus they did not have probable cause to arrest her.

The officers contend that they were not limited to arresting Robbin for Obstructing a Peace Officer; rather, they had probable cause to arrest her for a separate violation: "Obstructing Justice." R.165 at 8. Under that statute, a "person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution . . . of any person, he knowingly . . . furnishes false information . . . ." 720 ILCS 5/31-4(a); *see also People v. Childs*, 651 N.E.2d 252, 254 (Ill. App. Ct. 1995). According to the officers, it does not matter whether the officers subjectively believed that they were arresting Robbin for one obstruction offense or the other; what matters is that there was probable cause to support an arrest for obstructing justice.

The officers are correct. To be sure, the officers did not have probable cause to arrest Robbin for Obstructing a Peace Officer (because she committed no physical act of obstruction), and Officer Maloney did testify that he arrested Robbin based on "Obstruction," intending to charge her with "Obstruction of a Peace Officer." Maloney Dep. at 82–83; 98–99. But an "arresting officer's subjective reason for making the arrest does not need to be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). If there is probable

16

cause for any offense – even one that is not identified at the scene or in the charging documents – there is no false arrest. *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011). Robbin's legal argument fails, and the officers may rely on probable cause for the obstruction of justice offense.

This leads us to Robbin's factual argument. Robbin denies making any of the misleading statements that the officers say she made. She testified that she believes the true motivation for her arrest was retaliation for talking back to one of the officers. R. 114 ¶ 69. Under Robbin's version of events, when the officers tried to enter the apartment, she asked one of the officers if he had a warrant and if he could tell her his badge number. Not only did he refuse, he also called Robbin's mother "a bitch." *Id.* ¶ 69. Robbin believes that she was arrested in retaliation for talking back to this officer. *Id.*

The officers dispute Robbin's account of events. According to Officer Maloney, when he entered the apartment, he asked Robbin where Hodges was.[10] She replied by saying, "He ran out the front door. He's not here." *Id.* ¶ 68. Officer Niedzwiecki also testified that he heard Robbin say that Hodges "ran out the front door." R. 121 ¶ 57. But Robbin denies ever making these statements to the officers. Robbin Dep. at 139–140. Robbin does admit, however, that she told the officers that there were only

---

[10]The officers suggest that it was reasonable to believe that Robbin was the person who failed to open for the door for the police. R. 125 at 15. But the officers provide no evidence other than the fact that the voice they heard behind the door was female. *Id.*

5 people in the apartment and named them – but did not list Hodges. *Id.* at 140. She claims that she had no idea that Hodges was inside the apartment. *Id.*

The competing testimony demonstrates that there is a genuine issue of material fact. If Robbin did indeed tell the officers that Hodges ran out the front door, the officers could reasonably believe that she was trying to mislead them – which would give them probable cause to arrest her for Obstruction of Justice. But if Robbin only named the five people (as she says she did) in the apartment at the time, that statement does not conclusively establish – as a matter of law – that there was probable cause to believe that she was trying to mislead the officers. Viewing the facts in the light most favorable to the respective non-movants, a reasonable jury could find for either party. Thus, the Court denies both parties' motions for summary judgment on the false arrest claim.[11] To be clear, the officers who were not involved in the arrest of Robbin are entitled to summary judgment on this claim; only Officers Maloney and Chakiet remain subject to this claim. R. 125 at 13, 16.

### 2.    State Law Claim: Malicious Prosecution

Finally, the officers argue that Robbin's state-law malicious prosecution claim is barred by the statue of limitations. In Illinois, the limitations period for malicious prosecution actions is 1 year. 745 ILCS 10/8-101; *see also Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006). The officers argue that Robbin's malicious prosecution

---

[11]Qualified immunity also does not bar this claim, but the Court will monitor the evidence at trial and if the evidence differs from the summary-judgment discovery record, the officers may ask for judgment as a matter of law during trial.

claim accrued on February 26, 2007, the date that her criminal case was "stricken with leave to reinstate." According to the officers, because her lawsuit was filed over seventeen months later, on August 4, 2008, the claim is untimely. R. 125 at 17.

The claim was timely filed. "A cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor." *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004). When a court strikes a case with leave to reinstate, the proceedings are not definitively terminated. *Id.* Thus, the accrual date for Robbin's claim is not, as the officers argue, February 26, 2007.

Instead, there are two ways to determine the accrual date for a malicious prosecution claim. The first way is to look at when the speedy-trial period expires. *Ferguson*, 820 N.E.2d at 459. The speedy-trial period ends 160 days after the accused person makes a speedy trial demand. *Id.* at 461. But the record contains no evidence that Robbin ever made a speedy trial demand. The second way to determine the accrual date is to examine the circumstances and the nature of the prior disposition to determine whether it was a favorable termination of the proceedings. *Velez v. Avis Rent A Car System,* 721 N.E. 2d 652, 656 (Ill. App. Ct. 1999). In the absence of an explicit court disposition terminating the criminal case, Illinois courts use the date on which the statue of limitations for the underlying offense expires. *Id.* Here, Robbin was charged with a misdemeanor, Obstruction of a Police Officer, 720 ILCS 5/31-1, which

has a statute of limitations of 18 months.[12] That means that Robbin's claim accrued on July 12, 2008. Add 1 year to the accrual date, and the result is that her malicious prosecution claim was filed well within the 1-year statute of limitations.

With regard to the merits of the claim, to establish malicious prosecution, Robbin must show: (1) the commencement or continuation of an original criminal or civil proceeding by defendants; (2) termination of the proceeding in favor of plaintiff; (3) the absence of probable cause for the proceeding; (4) the presence of malice on defendants' part, and (5) damages resulting to plaintiff. *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006). The parties do not dispute elements (2) and (5). R.125 at 18–19. The Court will analyze the other three elements.

The officers first dispute that they commenced or continued the criminal proceedings. R. 125 at 19. But Robbin correctly argues that because Officer Maloney prepared and signed a misdemeanor complaint, and the Cook County State's Attorney relied on that complaint in charging her, Officer Maloney did commence the proceedings. R. 153 at 12. With regard to the probable cause and malice, the officers emphasize that they had probable cause to arrest Robbin (and thus did not act maliciously) for trying to mislead officers about where Hodges went. R. 125 at 18–19. Robbin disagrees because she believes that the officers did not have probable cause for the reasons discussed earlier. Because the malicious prosecution claim is tied up with

---

[12]The officers also indicate that they had probable cause to arrest Robbin for Obstruction of Justice, 720 ILCS 5/31-4. But that violation is a felony with a statute of limitations period of three years. 720 ILCS 5/3-5.

the determination of whether there was probable cause, summary judgment cannot be granted to either side. If it turns out that the officers did have probable cause, then Robbin cannot succeed on the claim. Otherwise, if she can demonstrate malice and commencement of proceedings, Robbin can succeed on this claim. Accordingly, the Court denies both parties' motion for summary judgment with regard to the malicious prosecution claim.

## IV.

The officers' motion for summary judgment [R. 119] is granted in part and denied in part. The Armstrongs' motion for summary judgment [R. 113] is granted in part and denied in part.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: February 21, 2012