UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAVERNE ARMSTRONG, ROBBIN M. ARMSTRONG, and CORDERO ARMSTRONG,<br>　　　　　　　Plaintiffs,<br>　v.<br>MICHAEL J. MALONEY, THIEN CHAIKET, BRIGID M. CARLQUIST, PIOTR SZCZUROWSKI, ALAN P. LASCH, GEORGE S. NIEDZWIECKI, ELIZABETH C. ROSELIEB, and CITY OF CHICAGO,<br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>) Case No. 08 C 4398<br>)<br>) Judge Edmond E. Chang<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER F.R.Civ.P 50(a)**

Plaintiffs, Laverne Armstrong, Robbin M. Armstrong, and Cordero Armstrong, by and through their attorneys, Irene K. Dymkar and Torreya L. Hamilton, hereby move this Court pursuant to Federal Rules of Civil Procedure (F.R.Civ.P.) 50(a) for judgment as a matter of law as 1) the illegal entry into the Armstrong home, 2) the illegal occupation or search of the Armstrong home, 3) the illegal initial detention or continued detention of plaintiffs, and 4) the false arrest of Robbin Armstrong.

### I. Illegal Entry into Armstrong Home as a Matter of Law

#### a. There was no probable cause to arrest Corvell Hodges for domestic battery as a matter of law

The only evidence of a possible domestic battery is defendants Piotr Szczurowski and George Niedwiecki testifying that Aimee Dunlap said he had been hit by her boyfriend, Corvell Hodges, in their second encounter with her on January 12, 2007. Defendant Szczurowski testified that Ms. Dunlap had no injuries and did not appear upset or shaken. Szczurowski testified that Ms. Dunlap never asked that Mr. Hodges be arrested, he never asked her if she wanted him arrested, she never said she wanted to sign a complaint, and he never asked her if she wanted to sign a complaint.

The bare statement that "he hit me" by Ms. Dunlap, if it were made, needed to be weighed in with what Szczurowski and Niedwiecki already knew about Ms. Dunlap. Ms. Dunlap had made multiple calls to the 911 center demanding service. When they met her two hours earlier, she said her car had been stolen by Mr. Hodges, but she had no proof that she owned the car. Szczurowski and Niedwiecki did not take the car off the hot list and they refused to go to 425 N. Hamlin, Chicago, Illinois to determine if Mr. Hodges was there. Although she demanded that they arrest Mr. Hodges, defendants Szczurowski and Niedwiecki told Ms. Dunlap they could not arrest her boyfriend. They told her to get a warrant.

When Ms. Dunlap said, "he hit me" two hours later, Mr. Hodges was present, across the street. Defendant Szczurowski said he told Mr. Hodges to "come here," but that Mr. Hodges was not under arrest and was free to leave. Both Szczurowski and Niedwiecki claim that they did not intend to arrest Mr. Hodges, but only wanted to talk to him to get his side of the story. They never told Mr. Hodges to stop or that he was under arrest. Mr. Hodges took off running.

These facts do not constitute probable cause to arrest Mr. Hodges as a matter of law. Sometimes information from or about a person claiming to be the victim of crime should lead a reasonable officer to be suspicious, making further investigation prudent and, because the "reasonableness" standard of the Fourth Amendment links the constitutional obligation to the standard of prudent conduct, the officer must do more. *Reardon v. Wroan*, 811 F.2d 1025 (7th Cir.1987); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1344-47 (7th Cir.1985). Having received a report of questionable reliability, defendants Niedzwiecki and Szczurowski needed to investigate further. *See Hebron v. Touhy* 18 F.3d 421, 422-23 (7th Cir.1994), citing *Illinois v. Gates*, 462 U.S. 213, 227, 103 S.Ct. 2317, 2326 (1983). In *Hebron,* the police officers knew that the complainants were tenants and they were being evicted, thus there was a significant chance that they bore a grudge against their landlords,

making it unreasonable, and therefore unconstitutional, to arrest the landlords on the tenants' mere say-so.

The holding in *BeVier v. Hucal*, 806 F.2d 123 (7th Cir.1986) is also applicable here. In *Bevier,* where plaintiffs were charged with child neglect, the Court held that the arrest was unreasonable where the parents were not interviewed before their arrest, saying that "[r]easonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place." *Id.* at 128. See *Moore v. The Marketplace Restaurant*, 754 F.2d 1336, 1345-46 (7th Cir.1985) ("it is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention"). The court should not impute to a hypothetical reasonable officer only defendant's actual knowledge. In determining whether defendant's actions alleged by plaintiff violated clearly established rights, courts may properly take into account any information a defendant "ought reasonably have obtained." *Jones v. Wilhelm*, 425 F.3d 455, 461 (7th Cir.2005); *Pounds v. Griepenstroh*, 970 F.2d 338, 340 (7th Cir.1992).

In *Moore v. Marketplace Restaurant, Inc*., *supra,* the Court noted that defendant officers cannot look to cases involving serious crimes and felonies which required a swift response on the part of the investigating police officers for the proposition that information supplied by citizens regarding an alleged crime is enough to furnish probable cause to arrest. *Moore v. Marketplace Restaurant, Inc.*,754 F.2d at 1344-45. Probable cause is often a matter of degree, varying with both the need for prompt action and the quality of information available. *Id. (*citing *Illinois v. Gates,* 462 U.S. 213, 238-39 (1983) and *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 4322, 438 (7th Cir.1986), *cert den'd* 481 U.S. 1028. Police, however, require a greater quantum of evidence when making arrests for less serious crimes. *Pasiewicz v. Lake County Forest Preserve Dist.,* 270 F.3d 520, 526 (7th Cir.2001).

Defendants Niedzwiecki and Szczurowski did not have probable cause to arrest Corvell Hodges for domestic battery.

### b. Probable cause to arrest for a misdemeanor does not justify a forcible entry into a home, as a matter of law

Domestic battery is a misdemeanor. Even if there were probable cause for an arrest, hot pursuit of a misdemeanant does not justify forcible entry into a home as a matter of law.

The United States Supreme Court held in *Payton v. New York,* 445 U.S. 573 (1980) that a routine *felony* arrest in a home was unconstitutional. The *Payton* Court, however, did not consider "the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either an arrest or search." *Id. at* 583.

*Welch v. Wisconsin*, 466 U.S. 740 (1984) dealt with part of the unresolved issue, that is, whether and under what circumstances the Fourth Amendment prohibits the police from making a warrantless night entry of a person's home in order to arrest him for a minor offense. The Court held that since the burden is on the police to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries, when the government's interest is only to arrest for a minor offense, the presumption of unreasonableness is difficult to rebut and the police usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate. *Id. at 570.*

The police therefore may not enter a person's home without a warrant even if probable cause exists to support an arrest. *Reardon v. Wroan,* 811 F.2d 1025 1028 (7th Cir.1987). An important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is made. In *Welsh v. Wisconsin,* 466 U.S. 740, 753 (1984), the Supreme Court held that "although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, see *Payton,* application of the exigent circumstance exception in the context of a home entry *should rarely be sanctioned when there is probable cause to believe that only a*

*minor offense, such as the kind at issue in this case,* has been committed." (Emphasis added). The Seventh Circuit has held that the circumstances must be "sufficiently grave enough" to justify a warrantless intrusion and there must be some urgency to the situation. *United States v. Johnson,* 170 F.3d 708, 718-19 (7th Cir.1999).

The only crime for which defendants claim they had probable cause to arrest Corvell Hodges was battery, in the sense of an offensive touching, in that defendants noted no injuries on Ms. Dunlap and, in fact, she was not even upset. There was no urgency to the situation regarding the alleged domestic battery and no danger to Ms. Dunlap because Ms. Dunlap was with defendant officers and her boyfriend was no longer on the scene.

It is important moreover to note that Corvell Hodges did not live at 425 N. Hamlin. More important is the fact that defendant police officers did not know *who* lived in the home. The Supreme Court has held that, *even armed with an arrest warrant*, absent exigent circumstances or consent, law enforcement officer cannot legally search for subject of the arrest warrant in the home of third party, without first obtaining *a search warrant. Steagald v. U.S.*, 451 U.S. 204, 101 S.Ct. 1642 (1981). Here there was no arrest warrant, no probable cause to arrest for a felony, no urgency regarding the battery charge, and no search warrant when the police they broke down the door and entered 425 N. Hamlin.

**c. There was no probable cause to arrest Corvell Hodges for possession of a weapon as matter of law**

Defendants say that, as they gave chase, they heard over the radio that there was "a great possibility that the man they were chasing had a gun." Defendants Szczurowski and Niedwiecki testified at trial that Ms. Dunlap never said anything about a gun, either that Mr. Hodges had one with him or pointed one or used one, or anything.

While it should have given the officers pause that the man they felt compelled to chase might have a gun, defendants Szczurowski and Niedwiecki did not have probable cause to arrest Corvell Hodges for illegal possession of a weapon. A police officer may

make a warrantless arrest based upon probable cause only "if the information available to the officer at the time of the arrest indicates that the arrestee has committed a crime." *BeVier v. Hucal*, 806 F.2d 123, 126 (7th Cir.1986); see also *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir.2000) ("Probable cause has been defined as facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.) (quotations omitted). When determining whether a police officer had probable cause to arrest, the Court asks whether the officer "had probable cause to believe that the predicate offense, as the state has defined it, has been committed." *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir.2001).

This case must be contrasted with *United States v. Lenoir,* 318 F.3d 725 (7th Cir.2003) where, *unlike here*, the police *actually saw* Lenoir in possession of two high-powered weapons, a shotgun and a rifle, as well as a magazine. Thus, they had greater justification to pursue Lenoir, and knew they were dealing with a possible felon, not a possible misdemeanant. The police followed Lenoir into a house and arrested him. The Court held that the hot pursuit and entry into the home were constitutional.

Defendants did not have probable cause to believe that Corvell Hodges had committed the crime of illegal possession of a weapon. At most, given the radio transmission, they had reasonable suspicion. That did not justify a forcible entry into 425 N. Hamlin.

**c. There was no emergency situation requiring a forced entry, as a matter of law**

The Court must look at the facts which defendants claim constitute an emergency situation. A police officer's subjective belief that exigent circumstances exist is insufficient to justify a warrantless search. *Bogan v. City of Chicago,* 644 F.3d 563, 571 (7th Cir.2011).

Defendants Szczurowski and Niedwiecki knew from their first encounter with Aimee Dunlap that there was some relation between Mr. Hodges and the people in 425 N. Hamlin,

in other words, that it was a friendly situation. When Szczurowski set up a surveillance at the house next door, it was because he thought that Mr. Hodges might try to enter the home at 425 N. Hamlin. Once again, there was a belief that there was a friendly relationship between Mr. Hodges and the people in the home or that Mr. Hodges himself lived there.

When Mr. Hodges returned to the scene, defendant Niedwiecki testified he knocked on the door, saying "let me in," and then, either he let himself in or someone let him in. Once again, these observations were not indicative of a hostile relationship between Mr. Hodges and the people in the home at 425 N. Hamlin.

Yet Szczurowski and Niedwiecki claimed they thought the people inside 425 N. Hamlin might be in danger and that justified breaking down the door, entering at gunpoint, and detaining the residents that they were supposedly trying to help. In other words, their actions when they entered the home belie their claim that they broke down the door to the home because they were concerned about the residents.

Defendants did not have a reasonable belief that there was an emergency situation at 425 N. Hamlin.

### d. If there were an emergency situation, it was dissipated as a matter of law when, according to defendant Niedzwicki, the woman at the door asked for a warrant

For purposes of this motion, plaintiffs are accepting certain aspects to the defendants' proof. Defendants claim someone either let Mr. Hodges into the home or he had a key; either way, there is no evidence that he forced his way into the home at 425 N. Hamlin. Defendants claim that they knocked on the door to the home and a woman demanded a warrant, refusing to open the door. If they believed this was an emergency situation, that belief should have dissipated once the woman at the door asked for a warrant. Defendants heard no cries for help through the door and there was not even an iota of evidence that the people who lived in the home were in any distress whatsoever.

In conclusion, defendants had no probable cause to arrest Corvell Hodges for domestic battery.  Even if they did have probable cause, an arrest for a misdemeanor charge when the alleged victim was not in danger did not justify a forcible entry.  Defendants had no probable cause to arrest Corvell Hodges for possession of a weapon based only on the radio information that he might have a weapon.  Defendants knew that there was a friendly, not a hostile, relationship between Mr. Hodges and the residents of 425 N. Hamlin and it was not reasonable for them to think this was an emergency situation.  If it was reasonable for them to think that this was an emergency situation, then that belief should have dissipated when the woman on the other side of the door asked them for a warrant.  Finally, defendants' actions after they broke down the door belie their claim that they broke in only to find out if everyone was safe.

**II.  Illegal Occupation or Search of Armstrong Home as a Matter of Law**

It is clear from the records from the Office of Emergency Management and Communication that defendant officers entered the Armstrong home at 8:51 PM on January 12, 2007.  Corvell Hodges was arrested at 8:52 PM, according to both the OEMC records and the arrest report.  Robbin Armstrong was arrested at 8:55 PM, according to her arrest report.  Any occupation or search of the Armstrong home after that time was illegal.

Plaintiffs testified that defendant police officers were in their home for 30 - 45 minutes, searching the entire time.  However, whether defendants were searching or not, just being present in the Armstrong home is a constitutional violation.

Defendant Szczurowski testified he was at the Armstrong home for 25 minutes, leaving once to go to his police vehicle to get an "RD" (crime report) number, which took about a minute.  He could not otherwise account for his time or activity.

Defendant Niedwiecki testified he was in the house for about 20 minutes and could not account for his time after Mr. Hodges was arrested and taken out.

8

Defendant Chaiket testified he was in the home for 10 - 15 minutes, "watching."

Defendant Maloney arrested Robbin Armstrong at 8:55 PM. Both he and Chaiket told the dispatcher they were leaving the scene with Mr. Hodges in their vehicle at 9:54 PM.

As of the writing of this motion, defendants Lasch, Roselieb, and Carlquist have not testified. It is anticipated that Roselieb and Carlquist will testify that they were in the home a significant period of time after Mr. Hodges was arrested. Roselieb and Carlquist stayed and detained residents after Mr. Hodges was taken out.

There has been testimony that officers were going in and out of rooms, even after Mr. Hodges was taken out. It is important to note that any search whatsoever after Mr. Hodges was arrested is unconstitutional. When hot pursuit is the justification for entry of a home, the scope of the search is very limited. The police can search only in the immediate vicinity of where they find the person they are chasing. See *United States v. Lenoir*, 318 F.3d 725, 731 (7th Cir.2003).

The Court in its rulings on plaintiffs' motion for summary judgment first held that the extended occupation of the Armstrong home was unconstitutional. The Court then modified its decision based on the fact that plaintiffs had not moved for summary judgment on the extended occupation claim. Now, however, it is clear from the defendants' admissions at trial that they were in the Armstrong home well beyond the time they should have remained in the home, even assuming they were justified to be there in the first place.

Plaintiffs are entitled to judgment as a matter of law on the illegal occupation or search claim.

### III. Illegal Initial Detention or Continued Detention as a Matter of Law

A person who is not free to leave his home while police are conducting a search is "seized" for Fourth Amendment purposes. *Jacobs v. City of Chicago,* 215 F.3d 758, 772 (7th Cir.2000), citing *Michigan v. Summers,* 452 U.S. 692, 696 (1981). Because the entry and

search of the Armstrong home was unconstitutional for the reasons set forth above, the seizure of plaintiffs Laverne Armstrong, Robbin Armstrong, and Cordero Armstrong was also unconstitutional *ab initio*.

Even assuming the entry precipitated by a hot pursuit were valid, the detention of plaintiffs beyond the time Mr. Hodges was apprehended in a closet in the bedroom closest to the back door, within a minute of the police entry, was unconstitutional. The extended police presence resulted in an extended detention for the plaintiffs.

Plaintiffs are entitled to judgment as a matter of law on the detention claim.

## IV. False Arrest of Robbin Armstrong as a Matter of Law

The Court has already ruled that there was no probable cause for the arrest of Robbin Armstrong on the charge of obstruction of a peace officer. Regarding the obstruction of justice charge, plaintiffs submit that, even accepting as true defendants Maloney, Szczurowski and Niedwiecki's testimony that they heard Robbin Armstrong say "he went out the front door," there was no probable cause to arrest her.

All three officers testified that they were not fooled for a moment that Corvell Hodges may have gone out the front door. They knew that other officers were out there. They never went out the front door themselves to check for Mr. Hodges. They never radioed to other officers to watch the front door.

The misinformation given has to interpose an obstacle that impeded or hindered defendant officers. See *People v. Baskerville,* 963 N.E.2d 898, 906 (Ill.,2012). Robbin's alleged false statements must have actually interfered with the administration of justice. *People v. Taylor,* 972 N.E.2d 753, 759, 362 Ill.Dec. 38, 44 (Ill.App. 2nd Dist.,2012). They did not.

The words had to have some efficacy. Defendants might as well have alleged that Robbin Armstrong said that Mr. Hodges was on the moon. In no way did what she is alleged to have said obstruct justice.

Robbin Armstrong should be granted judgment as a matter of law on the false arrest claim.

Dated: January 14, 2013         /s/ Irene K. Dymkar
        Irene K. Dymkar

Attorneys for Plaintiffs:

Irene K. Dymkar     Torreya M. Hamilton
300 W. Adams Street, Suite 330     Hamilton Law Office, LLC
Chicago, IL 60606-5107     53 West Jackson Blvd., Suite 452
(312) 345-0123     Chicago, IL 60604
    (312) 726-3173

**CERTIFICATE OF SERVICE**

I, Irene K. Dymkar, an attorney, certify that on the 14th day of January, 2013, a copy of these objections was served upon the attorneys for defendants named below through the Court's electronic filing system.

    Susan E. Sullivan
    Ryan Finlen
    Swanson, Martin & Bell, LLP
    330 N. Wabash, Suite 3300
    Chicago, IL 60611

Dated: January 14, 2013         /s/ Irene K. Dymkar
        Irene K. Dymkar